## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE A., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.  24-cv-2612 |
| | : | |
| LELAND DUDEK, | : | |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                              **March 26, 2025**

Jane A. ("Plaintiff") brought this action seeking review of the Commissioner of Social Security Administration's ("SSA") decision denying her claim for Social Security Disability Insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 (the "Act"). This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's Request for Review (ECF No. 14) is **GRANTED**.

## I.     PROCEDURAL HISTORY

Plaintiff protectively filed the instant application for disability benefits[1] on May 3, 2022, alleging disability beginning July 6, 2020, due to sleep apnea, gastroesophageal reflux disease ("GERD"), diabetes, high blood pressure, peripheral neuropathy, asthma, gastroparesis, non-alcoholic steatohepatitis ("NASH"), Meniere's disease, left meniscal tear, obesity, hypertension,

---

[1]  Plaintiff previously filed an application for disability benefits on January 5, 2021, also alleging disability beginning on July 6, 2020. (R. 64). That application was ultimately denied on April 28, 2022, as a previous ALJ determined that Plaintiff was capable of performing light work with various limitations. (R. 61-83).

liver disease, and degenerative disc or joint disease.  (R. 14, 177-81).  Plaintiff's application was

denied at the initial level on October 11, 2022.  (R. 14, 84).  Plaintiff then filed a request for

reconsideration, which was denied on February 15, 2023.  (R. 14, 95).  Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ").  (R. 123-24).  Plaintiff—represented by

counsel—as well as a vocational expert ("VE") testified at the July 3, 2023, administrative

hearing.  (R. 29-60).  At the hearing, Plaintiff amended the alleged onset date of her disability to

April 29, 2022, the day after the denial of her prior application.  (R. 33).  On August 14, 2023,

the ALJ issued a decision unfavorable to Plaintiff.  (R. 11-28).  Plaintiff appealed the ALJ's

decision, and the Appeals Council denied Plaintiff's request for review on May 9, 2024, thus

making the ALJ's decision the final decision of the Commissioner for purposes of judicial

review.  (R. 1-6).

On June 14, 2024, Plaintiff filed a complaint in the United States District Court for the

Eastern District of Pennsylvania.  (Compl., ECF No. 1).  On July 9, 2024, Plaintiff consented to

my jurisdiction pursuant to 28 U.S.C. § 636(c).  (Consent, ECF No. 6).  On October 24, 2024,

Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF

No. 14).  The Commissioner filed a Response on November 25, 2024.  (Resp., ECF No. 15).

Plaintiff filed a Reply on December 18, 2024.  (Reply, ECF No. 18).


## II.    FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here

the evidence relevant to the instant request for review.

### A.    Medical Evidence

Plaintiff has experienced gastrointestinal issues since at least 2017, when she was

diagnosed with gastroparesis.  She experiences nausea, headaches, dizziness, and several other symptoms characteristic of either Meniere's disease or vestibular migraines.[2]  Plaintiff is also diagnosed with asthma, hypertriglyceridemia, sleep apnea, hypertension, type II diabetes, obesity, vascular disease, diabetic microangiopathy, metabolic syndrome, liver disease, degenerative disc or joint disease, and a torn meniscus.  (R. 91-92, 415-16, 456-57).  To treat her diabetes, she takes metformin, Farxiga, and, since 2019, Ozempic.  (R. 323, 489).

On April 22, 2020, Plaintiff presented to her primary care provider, Alan Kravatz, M.D., of Penn Medicine, with breathing issues, lightheadedness, GERD, and pain in her bladder and right side.  (R. 456-57).  Upon examination, Dr. Kravatz noted that Plaintiff had epigastric tenderness and diagnosed her with shortness of breath; dyspepsia; generalized anxiety disorder; esophagitis; and abdominal pain, epigastric.  (R. 458).  At a December 15, 2020, evaluation, she reported pain in her left side and in her gallbladder, as well as having experienced diarrhea during the prior week.  (R. 311).  Dr. Kravatz noted mild upper abdominal tenderness.  (*Id.*).  His impressions were: "Essential hypertension, benign; Controlled type 2 diabetes mellitus without complication, without long-term current use of insulin (CMS-HCC); Obstructive sleep apnea syndrome; Situational stress; Gastroesophageal reflux disease, unspecified whether esophagitis present."  (R. 312).  On February 24. 2021, Plaintiff reported that she was still experiencing intermittent nausea due to gastroparesis.  (R. 302, 990, 1240).  At a May 25, 2021, follow-up appointment she reported that a recent increase of her Ozempic regimen had increased her nausea.  (R. 433).  On September 21, 2021, Plaintiff reported that she was still experiencing

---

[2]  A dispute exists in the medical record as to whether these symptoms are indicative of Meniere's disease or vestibular migraines.  Several medical providers have diagnosed Plaintiff with Meniere's disease, (R. 323, 456), while others have disagreed with that diagnosis, instead diagnosing vestibular migraines.  (R. 866, 1058).

quick onset nausea and diarrhea "with urgency." (R. 399-400).

Plaintiff treated with Alan Schorr, D.O., of Penn Specialty Care Endocrinology located in Bucks County. On February 2, 2022, although Plaintiff reported intermittent nausea and vomiting, Dr. Schorr noted that Plaintiff's abdomen was flat, no tenderness was present, her bowel sounds were normal, and no distension was apparent. (R. 352-53). On May 18, 2022, Plaintiff again reported intermittent nausea and vomiting. (R. 332). Upon examination, Dr. Schorr noted that Plaintiff was "negative" for abdominal pain, blood in stool, constipation, diarrhea, heartburn, melena, dizziness, tingling, tremors, or headaches. (R. 332-33). Again, Plaintiff's abdomen was flat, no tenderness was present, her bowel sounds were normal, and no distension was apparent. (R. 333). On September 21, 2022, Plaintiff noted continued intermittent gastrointestinal issues with chest discomfort, heartburn, nausea, and vomiting. (R. 1141). On September 27, 2022, Plaintiff complained of lightheadedness and dizziness. (R. 691).

On June 20, 2023, Dr. Schorr noted that Plaintiff had fatigue, general malaise, muscle weakness, extremity pain and numbness, headaches, nausea and vomiting, and sensitivity to light, heat, and cold. (R. 1523). He opined that she would frequently experience pain and other symptoms severe enough to interfere with her attention and concentration needed to perform simple work tasks. (R. 1524). He found that Plaintiff: was incapable of even "low stress" work; could sit 10 minutes before needing to get up and stand 10 minutes before needing to sit down; would need to walk for 10 minutes every 10 minutes; could sit, stand, and walk less than two hours each workday; required an at-will sit-stand option and unscheduled breaks twice a day for 15-20 minutes; needed to elevate her legs for 70% of the day; could rarely lift and carry 10 pounds; could rarely twist, stoop, and climb stairs and could never climb ladders; should avoid all exposure to extreme temperatures, humidity, wetness, smoke, perfume, fluxes, solvents,

fumes, odors, gases, and chemicals and concentrated exposure to dust; and would miss more than four days of work per month. (R. 1524-25).

On November 16, 2022, Plaintiff presented to Joshua Lee, M.D., complaining of nausea, vomiting, and abdominal bloating. (R. 682). He noted these symptoms were an exacerbation of her illness and perhaps "partly due to medication side effects." (R. 684). On December 21, 2022, Plaintiff complained of dizziness, headaches, and tooth pain and said she had to take a substantial amount of Antivert to help with her nausea. (R. 679). On December 27, 2022, she complained of fatigue, nausea, dizziness, and a worsening headache in the back of her head. (R. 673). She reported she had been to the ER the day before without improvement. (*Id.*). Dr. Lee noted that her Meniere's disease appeared to be "worsening." (R. 674). On January 11, 2023, Plaintiff again complained of lightheadedness. (R. 671). On May 31, 2023, Dr. Lee diagnosed Plaintiff with vestibular migraines and gastroparesis and stated that Plaintiff had fatigue, nausea, vomiting, and dizziness. (R. 1521). He opined that Plaintiff could sit up to two hours and stand and walk for one hour per workday; and frequently lift and carry 50 pounds or more, push or pull with her upper and lower extremities, handle, finger, feel, and reach. (*Id.*). Dr. Lee also opined that Plaintiff frequently experienced pain or other symptoms related to both her vestibular issues as well as her gastroparesis that interfered with her attention and concentration, thus affecting her ability to perform simple tasks. (R. 1522). He determined that Plaintiff should avoid temperature extreme, humidity, wetness, hazards, fumes, odors, chemicals, and gases. (*Id.*). He further provided that Plaintiff needed unscheduled 10- to 15-minute breaks every hour, as well as "expedite[d] access to restrooms." (*Id.*). He stated that this was due to her "severe gastroparesis with slow gastric emptying results in frequent vomiting episodes and nausea." (*Id.*).

On June 6, 2022, Plaintiff was seen by Milind Vaze, M.D. for a re-evaluation of her

gastroparesis. (R. 625). She reported that her nausea and vomiting had worsened with her medications for her diabetes. (*Id.*). Dr. Vaze recommended she undergo a gastric emptying scan and stop taking her diabetes medication—Ozempic—as that was likely contributing to her symptoms. (*Id.*). Plaintiff refused to stop taking Ozempic, however, stating that the medication had helped her lose weight and lower her A1C levels. (R. 323).

On July 1, 2022, Plaintiff underwent a gastric emptying study which revealed a delayed gastric emptying with 70% ingested contents remaining in the stomach at four hours. (R. 594). On July 12, 2022, Plaintiff presented to Dr. Sugandha Landy, M.D., who reviewed Plaintiff's gastric testing results. (R. 322-23). Plaintiff reported that she was constantly uncomfortable and unable to function due to her condition. (*Id.*). Dr. Landy noted that Plaintiff appeared "well" and in no acute distress. (R. 326). She also noted that Plaintiff planned on discussing with Dr. Schorr the possibility of adjusting her medications, based on the severity of her nausea and abdominal pain. (R. 328).

On October 6, 2022, State agency consultant, Roman Bilynsky, M.D., determined that Plaintiff's osteoarthrosis and allied disorders were severe medical impairments but that her gastrointestinal issues, diabetes, hyperlipidemia, obesity, asthma, liver disease, and sleep apnea were not. (R. 89). He also determined that Plaintiff: could occasionally lift or carry 20 pounds and 10 pounds frequently; was unlimited in her ability to push or pull with both her upper and lower extremities; and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but never climb ladders, ropes, or scaffolds. (R. 90-91). Based on these findings, Dr. Bilynsky found that Plaintiff could perform her past relevant work. (R. 93).

Upon reconsideration, on February 14, 2023, State agency consultant, David Clark, M.D., made similar findings to those of Dr. Bilynsky, determining that Plaintiff's gastrointestinal

issues, diabetes, obesity, asthma, liver disease, sleep apnea, and depression and anxiety were all "non severe" impairments.  (R. 98).  He opined that Plaintiff only had mild limitations in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself.  (R. 99).  He made the same findings as Dr. Bilynsky concerning Plaintiff's physical functional capacity and also determined that Plaintiff could perform her past relevant work.  (R. 100-01, 103).

      **B.**    **Nonmedical Evidence**

The record also contains nonmedical evidence.  Plaintiff testified at the July 3, 2023, administrative hearing as to her work history, the severity of her gastrointestinal and other medical issues, and how those medical issues affected her functional capacity.  (R. 35-52).  She testified that she worked part time as an actor in 2019 and full time as a program manager for most of the past 30 years.  (R. 36-37).  She stated that a typical shift required her to stand up to two hours and did not require lifting anything heavier than a "typical office supply."  (R. 38).

Regarding her health issues, Plaintiff testified that she was diagnosed with gastroparesis in 2017 and that because of it she: frequently had "bouts of projectile vomiting" all day; experiences stomach pain on a daily basis; struggles to sleep during the night due to her pain and nausea; is completely bedridden or confined to the bathroom on some days; and has to travel with a vomit bag because her symptoms could flare up at any time.  (R. 41-42).

She also noted that "a few specialists were going back and forth" as to whether she had Meniere's disease or vestibular migraines, but that her symptoms related to this issue included: visual disturbance; dizziness; and severe headaches.  (R. 44-46).  She testified that "when things are bad" she "can't exercise," "can't move [her] head," and sometimes has to go to the hospital to treat her symptoms.  (R. 45-46).

Plaintiff also testified that she took several medications for diabetes, but that she did not think those medications resulted in any significant side-effects.  (R. 46-47).

The record also includes a "vomit nausea log" that Plaintiff kept.  (R. 273-78).  It noted that Plaintiff experienced daily episodes of vomiting or bile on May 11, 12, 13, 15, 16, 25, and 26, 2022.  (*Id.*).  On May 25, 2022, she also reported being bedridden all day due to her nausea and vomiting.  (R. 274).

## III.    ALJ DECISION

Following the administrative hearing, the ALJ issued a decision in which he made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.

2.    The claimant has not engaged in substantial gainful activity since April 29, 2022, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: diabetes mellitus with neuropathy and gastroparesis; residuals of a left knee meniscal tear and degenerative joint disease; and obesity (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [she] can climb ramps and stairs occasionally; can never

climb ladders, ropes, and scaffolds; can stoop, crouch, kneel, and crawl occasionally; must avoid concentrated exposure to pulmonary irritants such as smoke, dust, concentrated fumes, and poor ventilation; must avoid concentrated exposure to extreme cold, extreme heat, humidity, and vibration; and no more than occasional exposure to unprotected heights and dangerous unguarded moving machinery.

6.    The claimant is capable of performing past relevant work as a program director and actor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from the amended alleged onset date, April 29, 2022, through the date of this decision (20 CFR 404.1520(f)).

(R. 16-23).

## IV.    LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on

> the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).


## V.    DISCUSSION

In her request for review, Plaintiff raises two issues: (1) the ALJ's RFC determination

was in error, as it did not adequately reflect Plaintiff's limitations pertaining to her gastroparesis; and (2) the ALJ erred in rejecting the medical opinions of Drs. Lee and Schorr.  (Pl.'s Br., ECF No. 14, at 9).

## A.      The Adequacy of the ALJ's RFC Assessment

### 1.      The Parties' Arguments

Plaintiff argues the ALJ erred in determining her RFC because, although he found that her gastroparesis was a severe medical impairment, he did not include a corresponding limitation.  (*Id.* at 9-11 (citing R. 17)).  According to Plaintiff, "[w]hen a condition is deemed a severe medically determinable impairment, it means that the condition has more than a minimal effect on the claimant's ability to do basic work activities."  (*Id.* at 9 (citing 20 C.F.R. § 404.1521)).  Plaintiff agrees with the ALJ's conclusion that her gastroparesis constitutes a severe medical impairment and emphasizes the symptoms and limitations that stem from it.  (*Id.*). However, she takes issue with the ALJ's partial rejection of the medical opinions of Drs. Lee and Schorr insofar as both opined that based on the severity of her gastroparesis, she would have trouble concentrating to complete simple tasks and would also require taking frequent, unscheduled breaks during the workday.  (Pl.'s Br., ECF No. 14, at 11-15; R. 1521-26). According to Plaintiff, based on this evidence the ALJ should have included—or at least discussed the merits of—either an off-task limitation or a limitation pertaining to skill level, pace, or quota.  (*Id.* at 10-11).  Plaintiff argues that the fact that such limitations "are not included within the RFC" is "contradictory to the ALJ's finding of a severe impairment causing more than minimal effect on her ability to work."  (*Id.* at 9-10).

The Commissioner responds that the RFC adequately reflects the limitations established by the record.  (Resp., ECF No. 15, at 5).  He notes that the ALJ may exclude from the RFC any

unsupported limitations.  (*Id.* (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007))).  The ALJ's rationale "only requires that the 'agency's path may reasonably be discerned.'"  (*Id.* at 6 (quoting *Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021))).  Relying on these principles, the Commissioner argues that having found the opinions of State agency consultants Bilynsky and Clark persuasive, the opinions of Drs. Lee and Schorr unpersuasive, and Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms inconsistent with the medical record, the ALJ adequately "considered the entire record" and "sufficiently explained his findings."  (*Id.*).  The Commissioner concedes that the record established gastroparesis as a medically determinable impairment, but contends that the condition is not as severe as Plaintiff maintains.  (*Id.* at 7 (citing *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995))).  In support of this contention, the Commissioner points out that Plaintiff: refused to alter her Ozempic regimen, notwithstanding the fact that several medical providers counseled her that it may have been a factor in her symptoms worsening; was "encouraged to start lifestyle modifications, as her diet was less than optimal"; and was not hospitalized for her gastroparesis "during the relevant period of review."  (*Id.* at 7-8).  Ultimately, the Commissioner maintains that read as a whole, the ALJ's rationale is logical and capable of meaningful judicial review.[3]  (*Id.* at 8 (citing *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 302 (2015))).

Plaintiff replies that the arguments set out by the Commissioner were not actually articulated by the ALJ in his opinion, and that the ALJ clearly rejected the opinions of Drs. Bilynsky and Clark insofar as they opined that her gastrointestinal issues were non-severe.

---

[3]  The Commissioner also makes various arguments concerning how the ALJ evaluated the severity and significance of Plaintiff's symptoms related to Meniere's disease or vestibular migraines.  (Resp., ECF No. 15, at 6-8).  However, Plaintiff does not raise this issue in her brief. (*See generally* Pl.'s Br., ECF No. 14).

(Reply, ECF No. 18, at 3).

### 2.    Analysis

Step two of the sequential analysis "involves a minimum threshold determination of whether the claimant is suffering from a severe impairment." *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000) (citing 20 C.F.R. § 404.1520(c)). An impairment is considered severe if it significantly limits the individual's physical or mental ability to do basic work activities. *Id.*; 20 C.F.R. § 404.1520(c). The ALJ must then determine whether the claimant retains the ability to perform either her past relevant work or some less demanding employment, based on her RFC. *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 535 (1990)).

A claimant's RFC is what she can still do despite her established impairments. 20 C.F.R. § 404.1545(a)(1); *see also Burnett*, 220 F. 3d at 121. The RFC should set out a function-by-function assessment of the claimant's work-related abilities resulting from the claimant's medically determinable impairments. *Id.*; SSR 96-8p, 1996 WL 374184 (July 2, 1996). In determining a claimant's RFC, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. *Id.* § 404.1545(a)(2). The ALJ also considers "any statements about what [a claimant] can still do that have been provided by medical sources" and any "descriptions and observations of [the claimant's] limitations from [her] impairment(s), including limitations that result from [her] symptoms, such as pain . . . ." *Id.* at § 404.1545(a)(3).

In crafting a claimant's RFC, the ALJ must include all credibly established impairments and limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 553-54 (3d Cir. 2005). The ALJ may not ignore "[l]imitations that are medically supported and otherwise uncontroverted in the record." *Id.* at 554 (citing *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002)). "Limitations that are

medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.'" *Id.* (quoting *Mason*, 994 F.2d at 1066).  An ALJ must consider the medical opinions together with the rest of the relevant evidence, and explain the weight given to those opinions in his decision. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011).  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See, e.g.*, *Byrd v. Comm'r of Soc. Sec.*, No. 23-4957, 2024 WL 4631645, at *9 (E.D. Pa. Oct. 30, 2024); *Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).  The social security regulations "require, an ALJ to offer 'a narrative discussion describing how the evidence supports'" the limitations imposed. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) (citing SSR 96-8P, at *7).  Though "[t]he ALJ need only include in the RFC those limitations which he finds to be credible," *Salles*, 229 F. App'x at 147, the ALJ must explain why he found certain limitations unwarranted, and further "must build 'a logical bridge between the evidence and the result,'" *Nolasco v. Kijakazi*, No. 21-cv-4119, 2023 WL 2773532, at *12 (E.D. Pa. Apr. 3, 2023) (quoting *Haut v. Colvin*, No. 15-511, 2016 WL 3962020, at *11 (W.D. Pa. July 19, 2016)), in order to withstand scrutiny.

Here, the ALJ concluded that Plaintiff's gastroparesis was a severe medically determinable impairment.  (R. 17).  Moreover, the ALJ stated that "[t]here is no doubt the claimant is limited due to her [gastroparesis.]"  (R. 21).  Yet notwithstanding these findings, the ALJ failed to explain how Plaintiff's gastroparesis "limited" her functional capacity.  As Plaintiff points out, both Drs. Lee and Schorr opined that: her gastroparesis resulted in nausea and

vomiting; due to these symptoms, Plaintiff required (among other limitations or accommodations) frequent, unscheduled breaks during the workday; Plaintiff would miss four or more days of work per month; and Plaintiff's condition was severe enough to interfere with the attention and concentration needed to perform simple work tasks. (R. 1521-26). In addition, Plaintiff testified that she frequently experienced nausea and vomiting; that she carried around a vomit bag because her symptoms might arise at any time; that she was occasionally bedridden or confined to the couch during severe bouts of nausea; and that she had difficulty sleeping due to her stomach pain and nausea. (R. 40-42).

Though the record evidence relating to her gastroparesis may have supported limitations such as either an off-task limitation or a limitation pertaining to skill level, pace, or quota in Plaintiff's RFC, the ALJ failed to include either, or explain why such limitations were not warranted. (R. 17-22); *see also Hess*, 931 F.3d at 209 (noting that the ALJ must adequately explain his RFC assessment). At best, the ALJ stated that "while this condition could be uncomfortable, there is no indication that she needs to stay in bed or even at home during these episodes of abdominal pain, nausea, and vomiting." (R. 21). However, though Plaintiff's gastroparesis may not confine her to her bed or home, the record evidence illustrated that it might interfere with her ability to stay on task during the pendency of the workday and/or her ability to keep pace or meet certain quotas in the work environment. The ALJ completely ignored these possibilities and the record evidence that would support such conclusions. *See Chandler*, 667 F.3d at 362 (noting that an ALJ must consider the medical opinions together with the rest of the relevant evidence, and explain the weight given to those opinions in his decision); *Fargnoli*, 247 F.3d at 41 (same).

The Commissioner argues that the ALJ's rationale can be "easily discerned," as the ALJ

explicitly credited the opinions of State agency consultants Drs. Bilynsky and Clark (who both

determined that Plaintiff's gastroparesis was not severe) and found the opinions of Drs. Lee and

Schorr inconsistent with the medical evidence.  (Resp., ECF No. 15, at 6-7).  This contention is

belied by the ALJ's opinion and the record.  First, Plaintiff correctly notes that although the ALJ

credited portions of the opinions of Drs. Bilynsky and Clark, the ALJ implicitly rejected those

opinions to the extent they determined that Plaintiff's gastroparesis was not severe, as the ALJ

himself came to the opposite conclusion.  (Reply, ECF No. 18, at 3; R. 17).  Second, the ALJ's

review of the opinions of Drs. Lee and Schorr is simply insufficient to allow for meaningful

review as to why the ALJ failed to include in the RFC gastroparesis-related limitations assessed

by these physicians.  *See Jones*, 364 F.3d at 505 (noting that although the ALJ is not required "to

use particular language or adhere to a particular format in conducting [the] analysis," the

decision must contain "sufficient development of the record and explanation of findings to

permit meaningful review") (citing *Burnett*, 220 F. 3d at 120).

In finding Dr. Lee's opinion unpersuasive, the ALJ stated:

> Dr. Joshua Lee completed a medical source statement on May 31,
> 2023.  He found the claimant could perform a very restricted range
> of sedentary work and could not work a full 8-hour workday.  I
> find this this opinion is not persuasive.  This opinion overestimates
> as to the severity of the claimant's limitations to the extent that it is
> not consistent with the medical record.  Although there is
> documentation that the claimant is limited by abdominal pain,
> dizziness, left knee residuals and diabetes, there is no support in
> Dr. Lee's treatment records nor in the overall record for these very
> restrictive limitations provided by Dr. Lee in the medical source
> statement.

(R. 22).

The ALJ therefore, in reviewing Dr. Lee's medical opinion, rejected only the restriction

to a limited range of sedentary work and purported inability to work a full eight-hour workday.

But the ALJ, in this discussion of Dr. Lee's opinion and in his formulation of the RFC, completely ignored the doctor's findings that Plaintiff's gastroparesis necessitated unscheduled breaks every hour during the workday and would result in the diminished ability to concentrate to complete simple tasks, even though the ALJ agreed that the condition was "severe" and that there was "no doubt" that it limited her. (R. 17, 21, 1521-22).

Similarly, in finding Dr. Schorr's opinion unpersuasive, the ALJ stated:

> Alan Bruce Schorr, D.O., completed a medical source statement on June 21, 2023. He found the claimant could perform less than sedentary work and would not be able to complete a full 8-hour workday. This opinion is not persuasive as the medical record, including Dr. Schorr's progress notes, does not support this very restrictive residual functional capacity. The record does not support Dr. Schorr's conclusion that the claimant's impairments limit her sitting, standing and walking to less than sedentary levels.

(R. 22).

Here again the ALJ focused on the restriction to a limited range of sedentary work, thus completely ignoring the other relevant portions of Dr. Schorr's medical findings—namely, that Plaintiff's gastroparesis necessitated that Plaintiff take two unscheduled breaks per day and would result in the diminished ability to concentrate to complete simple tasks. (R. 1523-26). The ALJ simply did not engage with the full substance of these medical opinions, either in his discussion of them or in the RFC. *See Mason*, 994 F.2d at 1066 (an ALJ may not reject medical evidence for no reason); *Fargnoli*, 247 F.3d at 41 (same); *see also Jones*, 364 F.3d at 505.

Finally, in arguing that the record contains substantial evidence to support the ALJ's RFC assessment, the Commissioner points out that Plaintiff: refused to alter her Ozempic regimen, notwithstanding the fact that several medical providers counseled her that it may have been a factor in her symptoms worsening; was "encouraged to start lifestyle modifications, as her diet was less than optimal"; and was not hospitalized for her gastroparesis "during the relevant period

17

of review." (Resp., ECF No. 15, at 7-8). However, these factors do not remedy the ALJ's failure to meaningfully engage with the portions of the opinions highlighted above, i.e., Plaintiff's need for unscheduled breaks and inability to complete simple tasks due to her symptoms.

First, in making his RFC assessment, the ALJ did not actually purport to rely on Plaintiff's refusal to alter her medication regimen or diet, (R. 18-22), and courts are not allowed to rely on after-the-fact justifications by the Commissioner to bolster an ALJ opinion that does not adequately deal with contrary evidence. *See Fongsue v. Saul*, No. 20-574, 2020 WL 5849430, at *8 (E.D. Pa. 2020) ("[T]his court is constrained to review only the ALJ's reasoning, not the post hoc arguments propounded by Defendant after the ALJ's decision") (citing *Fargnoli*, 247 F.3d at 44 n.7); *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *Teada v. Comm'r of Soc. Sec.*, No. 19-4537, 2020 WL 1953660, at *2–3 (E.D. Pa. 2020) (citations omitted). Second, although the ALJ highlighted the absence of hospitalizations during the relevant period to support his conclusion that "there is no indication that [Plaintiff] needs to stay in bed or even at home during . . . episodes of abdominal pain, nausea and vomiting," he nonetheless failed to address the possibility that her gastroparesis, though perhaps not so severe as to keep her at home for four or more days per month as Drs. Lee and Schorr opined, (R. 1522, 1526), still resulted in certain functional limitations that should have been included in her RFC—namely an off-task limitation or a limitation regarding her skill level, pace, and ability to meet certain quotas in the workplace, in order to address her need for unscheduled breaks and inability to concentrate sufficiently to perform simple tasks, as also determined by these doctors.

In sum, for the reasons laid out above, I agree with Plaintiff that the ALJ's RFC assessment does not adequately reflect Plaintiff's limitations stemming from her gastroparesis.

### B.    The ALJ's Rejection of Certain Medical Opinions

#### 1.    The Parties' Arguments

Plaintiff next argues that the ALJ's partial rejection of the medical opinions of Drs. Lee and Schorr, was "conclusory," and therefore incapable of meaningful judicial review.[4]  (Pl.'s Br., ECF No. 14, at 11-15 (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004))).  She points out that the ALJ provided no citations to the record in finding these medical opinions unpersuasive.  (*Id.* at 12-14).  The Commissioner responds that the ALJ's rationale was satisfactory.  (Resp., ECF No. 15, at 10).  First, the Commissioner reiterates that the ALJ found the opinions of both Drs. Bilynsky and Clark persuasive.  (*Id.* at 11; *see also id.* at 6-7).  Second, the Commissioner contends that Drs. Lee and Schorr "both offered check-box form opinions," which inherently carry less weight.  (*Id.* at 11-12 (citing *Mason*, 994 F.2d at 1065)).  According to the Commissioner, the ALJ sufficiently explained why these opinions were not fully consistent with the record.  (*Id.* at 12).

#### 2.    Analysis

An ALJ is required to articulate how he or she considered the medical opinions contained in the record.  *See* 20 C.F.R. § 404.1520c; *Mason*, 994 F.2d at 1066.  The most important factors are supportability and consistency, and the ALJ must explain how he or she considered the

---

[4] As is apparent from the foregoing discussion, *see supra* § III.A, Plaintiff's second claim is largely subsumed within her first because her contention that her RFC does not include all her limitations related to her gastroparesis necessarily requires consideration of the ALJ's reasons (or lack thereof) for rejecting the portions of Drs. Lee's and Schorr's opinions setting forth those limitations.  Nonetheless, because both parties address the claims separately, this Court does so as well.

supportability and consistency factors for a medical source's medical opinions or prior

administrative medical findings in the determination or decision.  20 C.F.R. § 404.1520c(a)(2).

Although the ALJ is not required "to use particular language or adhere to a particular format in

conducting [the] analysis," the decision must contain "sufficient development of the record and

explanation of findings to permit meaningful review."  *Jones*, 364 F.3d at 505 (citing *Burnett*,

220 F.3d at 119).  The ALJ must provide "not only an expression of the evidence [he] considered

which supports the result, but also some indication of the evidence which was rejected."  *Cotter*,

642 F.2d at 705; *see also Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility

of the evidence, he must give some indication of the evidence which he rejects and his reason(s)

for discounting such evidence.").  "In the absence of such an indication, the reviewing court

cannot tell if significant probative evidence was not credited or simply ignored."  *Id.*

First, for the reasons recited above, the ALJ did not sufficiently explain his rationale for

finding the opinions of Drs. Lee and Schorr unpersuasive.  Though the ALJ adequately explained

his rejection of the portions of those opinions finding that Plaintiff could only work a limited

range of sedentary work, had substantial standing/walking limitations, and would be absent from

work for four or more days per month, the ALJ did not sufficiently engage with the portions of

those opinions finding that Plaintiff's ability to concentrate to complete simple tasks would be

negatively impacted by her gastroparesis, and that Plaintiff required frequent unscheduled breaks

during the workday.  And though the ALJ noted that the findings of Drs. Lee and Schorr were

not supported by their own treatment notes, it is clear from his opinion that he was not referring

to these latter findings highlighted by Plaintiff in her brief.  (R. 22 (discussing only these

doctors' findings pertaining to her ability to perform a limited range of sedentary work, her

standing/walking capabilities, and whether her gastroparesis would keep her bedridden or

homebound for more than four days per month)).

Moreover, as explained in detail above, the opinions of State agency consultants Bilynsky and Clark (that Plaintiff's gastroparesis was not severe) do not constitute substantial evidence justifying the ALJ's partial rejection of the opinions of Drs. Lee and Schorr because the ALJ implicitly rejected these opinions insofar as he concluded that Plaintiff's gastroparesis was, in fact, severe. *Burnett*, 220 F.3d at 118.

Lastly, the Commissioner argues that the opinions of Drs. Lee and Schorr were due significantly less weight, as they were mere check-box forms. (Resp., ECF No. 15, at 11-12); *Mason*, 994 F.2d at 1065 ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. As we pointed out in discussing 'residual functional capacity reports,' where these so-called 'reports are unaccompanied by thorough written reports, their reliability is suspect . . . .'") (quoting *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir.1986)). This contention is partially belied by the record, as these opinions, while containing checked boxes, also included areas for the physicians to further explain or supplement their medical findings. (R. 1521-26). Though Dr. Schorr did not further supplement his opinion on the form, Dr. Lee supplemented his opinion by stating that Plaintiff's "severe" gastroparesis with "slow" gastric emptying resulted in "frequent vomiting episodes and nausea," and that she needed frequent breaks for "emesis" and expedited access to restrooms. (R. 1521-26). Moreover, even if these medical opinions were due less weight based on their form, the ALJ was still duty-bound to review them and offer his opinion as to what weight he assigns them and why. *See Chandler*, 667 F.3d at 362; *Fargnoli*, 247 F.3d at 41. If the ALJ felt that they were due less weight based on their form, he was required to say so. *See Joshua L. v. Colvin*, No. 23-cv-4528, 2024 WL 5170747, at *10 (E.D. Pa. Dec. 19, 2024) (rejecting the plaintiff's argument that

checked-box forms may be entitled to great weight as the ALJ had expressly discounted the opinions because they lacked supporting explanations) (citing *Simmonds*, 807 F.2d at 58); *Cf. Schuster v. Astrue*, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision.").  The ALJ simply did not meaningfully engage with the portions of the opinions noted above.  This was error.  Accordingly, the Court remands on this related ground as well.


**VI.    CONCLUSION**

For the reasons set forth above, Plaintiff's request for review is **GRANTED**.  An appropriate Order follows.


BY THE COURT:

 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge